UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW HAMPSHIRE


Steven Dominic

    v.

Stephen R. Goldman, et al.

Civil No. 21-cv-148-LM
Opinion No. 2021 DNH 108 P


**O R D E R**

Proceeding pro se, plaintiff Steven Dominic brings this action against attorneys who formerly represented his deceased mother's estate, a former special administrator of the estate, and judicial officials who presided over administration of the estate. Plaintiff, who is currently the estate's executor and the only person with a beneficial interest in it, alleges that the defendants conspired to deprive him of his interest in his mother's estate and intentionally interfered with his inheritance. Plaintiff brings federal claims under 42 U.S.C. § 1985(3) for conspiracy to interfere with civil rights and under 42 U.S.C. § 1983 for violation of his Fourteenth Amendment rights to due process and equal protection. In addition, plaintiff brings claims under New Hampshire law for intentional interference with inheritance, unfair business practices, legal malpractice, fraudulent misrepresentation, and breach of fiduciary duty.

Defendants move to dismiss plaintiffs' claims (doc. nos. 14, 16, 23). Plaintiff objects. For the reasons set forth below, the court grants defendants' motions to dismiss, dismisses plaintiff's federal claims with prejudice, and dismisses his state-

law claims for lack of subject-matter jurisdiction without prejudice to his right to pursue those claims in state court.

## LEGAL STANDARD

Under Federal Rule of Civil Procedure 12(b)(6), the court must accept the factual allegations in the complaint as true, construe reasonable inferences in the plaintiff's favor, and determine whether the factual allegations in the complaint set forth a plausible claim upon which relief may be granted. See Breiding v. Eversource Energy, 939 F.3d 47, 49 (1st Cir. 2019). A claim is facially plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009).

## FACTUAL ALLEGATIONS

Except where otherwise noted, the following facts are drawn from plaintiff's amended complaint (doc. no. 4) and the attached exhibits.

Plaintiff's mother, Elaine Dominic ("Elaine"), died on November 8, 2016, survived by her sons Steven Dominic (the plaintiff in this action), Reginald Dominic ("Reginald"), and Gary Dominic ("Gary"). At the time of Elaine's death, Reginald lived in her house in Boscawen, New Hampshire, and plaintiff, although a New Hampshire resident, was on an extended visit with his wife's parents in Florida. Plaintiff had at that time been estranged from his brothers Reginald and Gary for several years. Plaintiff did not learn of Elaine's death until December 6, 2016,

when Reginald notified plaintiff's mother-in-law by telephone and she, in turn, notified plaintiff.

On December 7, 2016, plaintiff contacted Elaine's attorney, defendant Stephen R. Goldman,[1] to advise him of Elaine's death and to determine whether he would be willing to represent Elaine's estate for probate purposes. Attorney Goldman agreed to take on the representation. On December 12, 2016, having obtained Reginald's consent to retaining Attorney Goldman and agreement to meet with him, plaintiff called Goldman back to confirm their arrangement. It does not appear that plaintiff had any further involvement with Attorney Goldman or with Reginald, or otherwise with the administration of Elaine's estate, until May 26, 2017.

On December 28, 2016, Attorney Goldman filed a petition for administration of Elaine's estate in the New Hampshire Circuit Court, 6th Circuit — Probate Division — Concord. The petition requested that the court appoint Reginald as the estate's executor. Defendant Margaret-Ann Moran,[2] in her capacity as the

---

[1] At all material times, Attorney Goldman was employed by defendant Bianco Professional Association Attorneys at Law (the "Bianco law firm"), and defendant James J. Bianco, Jr., served as the Bianco law firm's principal. The court will refer to Attorneys Goldman and Bianco and the Bianco law firm collectively as the "Bianco defendants" in this order.

[2] At all material times, defendant Sharon A. Richardson served as the clerk of court for the New Hampshire Circuit Court, 6th Circuit — Probate Division — Concord. The court will refer to Judge Moran and Clerk Richardson collectively as the "judicial defendants" in this order.

presiding probate judge of the Circuit Court, granted the request and named Reginald as the executor.

In late March 2017, Reginald's health began failing rapidly. On April 2, 2017, Gary moved into the estate's house in Boscawen, where Reginald was still residing. Gary observed that the valuables and motor vehicles that he expected to see in the house were missing, as were all of Elaine's financial and medical records.

Reginald died on April 5, 2017. On April 10, 2017, Gary met with Attorney Goldman to discuss how to proceed following Reginald's death. Gary and Attorney Goldman agreed that the best course would be for Attorney Goldman to serve as the administrator of the estate. Accordingly, Attorney Goldman filed a petition to be named as the administrator of Elaine's estate. In April or May 2017, Judge Moran granted the request.

On May 26, 2017, while still in Florida visiting his wife's family, plaintiff received written notice of Attorney Goldman's appointment as the estate's administrator. This was plaintiff's first notice both of Reginald's death and of Attorney Goldman's appointment. That same day, plaintiff called Attorney Goldman to ask why he had not been consulted in connection with the decision to request Attorney Goldman's appointment as administrator. Plaintiff also asked why Attorney Goldman had not requested that plaintiff be appointed as executor of the estate. Attorney Goldman responded that Elaine's will prohibited plaintiff from serving as executor of her estate. Plaintiff believes that Attorney Goldman's response was knowingly false.

Plaintiff returned to New Hampshire on June 1, 2017. On June 6, 2017, plaintiff met with Attorney Goldman. At that meeting, plaintiff became suspicious that Attorney Goldman had conspired with Reginald to interfere with plaintiff's interest in Elaine's estate and to cause harm to Elaine.

On June 10, 2017, plaintiff and his wife moved into the estate's Boscawen house. Plaintiff's brother Gary continued to reside there after plaintiff and his wife moved in.

On August 24, 2017, plaintiff filed a pleading in probate court objecting to Attorney Goldman's inventory of the estate's assets and requesting that Attorney Goldman resign as the estate's administrator. Attorney Goldman subsequently resigned at a status conference with the court on September 8, 2017. At that conference, plaintiff requested that the court appoint a special administrator to replace Attorney Goldman. On October 30, 2017, Judge Moran appointed defendant Shane R. Stewart to serve as the special administrator of Elaine's estate.

Attorney Stewart conducted an investigation of Elaine's financial and medical records. On February 9, 2018, Attorney Stewart filed a report to apprise the probate court of his findings. Attorney Stewart reported that it was "clear" that assets had been misappropriated from Elaine's estate and that Reginald had "violated his duties under a power of attorney" prior to Elaine's death. Doc. no. 4, Exh. 10, ¶ 2. Attorney Stewart also reported that plaintiff, Elaine's estate, and Reginald's estate were pursuing a global settlement. See id., ¶ 4. Plaintiff executed a settlement agreement on February 16, 2018, which apparently resulted

in plaintiff becoming the sole beneficiary of both Elaine's and Reginald's estates.
However, plaintiff believes that Attorney Stewart failed to disclose the full extent of
Reginald's misappropriation of Elaine's assets and counseled plaintiff to settle his
claims in order to conceal improper conduct of Attorney Goldman and the judicial
defendants.

On August 3, 2018, plaintiff moved the probate court to appoint him as
administrator of Elaine's estate. Judge Moran granted plaintiff's motion, and
Attorney Stewart resigned. On October 19, 2018, plaintiff similarly moved the
probate court to appoint him as the administrator of Reginald's estate. The probate
court granted that motion as well.

On April 26, 2019, plaintiff moved the probate court on behalf of Elaine's
estate to toll the statute of limitations for recovery of real property. On August 18,
2019, Judge Moran denied the motion. Plaintiff moved on September 5, 2019 for
introduction of certain of Elaine's medical records into evidence and on September
13, 2019 for reconsideration of Judge Moran's decision denying his motion to toll.
Judge Moran denied those motions respectively on October 2 and 10, 2019. In
consequence, plaintiff "lost faith" in Judge Moran and moved for her recusal on
October 24, 2019. Doc. no. 4, ¶¶ 195-196. On October 30, 2019, Judge Moran found
that grounds for recusal did not exist but nevertheless granted the motion and
recused herself "given the allegations made by the Administrator." Doc. no. 4, Exh.
43.

The court takes judicial notice that the probate court subsequently closed both Elaine's and Reginald's estates, that plaintiff appealed both closures, and that the New Hampshire Supreme Court denied plaintiff's appeal. See In re Estate of Elaine Dominic; In re Estate of Reginald J. Dominic, Case No. 2020-0146 (N.H. Dec. 15, 2020).

Arising out of the foregoing, plaintiff brings two federal claims and five state-law claims. Plaintiff's federal claims are pled as Counts I and II of his amended complaint. In Count I, plaintiff alleges that all of the individual defendants[3] conspired in violation of 42 U.S.C. § 1985(3) to interfere with his civil rights, and in Count II he alleges that the individual defendants deprived him of his Fourteenth Amendment rights to due process and equal protection in violation of 42 U.S.C. § 1983.

Plaintiff's state-law claims are pled as Counts III-VII of his amended complaint. Plaintiff alleges that all defendants intentionally interfered with his inheritance from Elaine (Count III), that all of the individual defendants violated New Hampshire's unfair business practices statute through the use of unfair or deceptive acts or practices in the conduct of trade or commerce (Count IV), that Attorneys Goldman, Bianco, and Stewart are liable for legal malpractice (Count V), that Judge Moran and Attorney Goldman are liable for fraudulent misrepresentation (Count VI), and that Attorneys Goldman and Stewart violated fiduciary duties in connection with administering Elaine's estate (Count VII).

---

[3] That is, all of the defendants other than the Bianco law firm.

7

**DISCUSSION**

For the reasons discussed below, the court finds that the judicial defendants enjoy immunity from suit in connection with all of plaintiff's claims, and that plaintiff fails to state a federal claim against any other defendant. The court further finds that it lacks federal subject-matter jurisdiction over plaintiff's state-law claims.

I.       Judicial Immunity of the Judicial Defendants

Pursuant to the doctrine of judicial immunity, "[a] judge is absolutely immune from liability for h[er] judicial acts even if h[er] exercise of authority is flawed by the commission of grave procedural errors." Stump v. Sparkman, 435 U.S. 349, 359 (1978). In consequence, judicial officers "are not liable to civil actions for their judicial acts, even when such acts are in excess of their jurisdiction and are alleged to have been done maliciously or corruptly." Id. at 356 (citations omitted); see also Nystedt v. Nigro, 700 F.3d 25, 32 (1st Cir. 2012). For purposes of the doctrine, whether an act is "judicial act" depends on both the nature of the act (i.e., "whether it is a function normally performed by a judge") and the expectations of the parties (i.e., "whether [the plaintiff] dealt with the judge in h[er] judicial capacity"). Id. at 362; see also Goldstein v. Galvin, 719 F.3d 16, 25 (1st Cir. 2013). "Therefore, it is an axiom of black letter law that when a judge carries out

traditional adjudicatory functions, he or she has absolute immunity for those

actions." Zenon v. Guzman, 924 F.3d 611, 616 (1st Cir. 2019) (citations omitted).[4]

"Like other forms of official immunity, judicial immunity is an immunity

from suit, not just from ultimate assessment of damages." Mireles v. Waco, 502

U.S. 9, 11 (1991) (citations omitted). "Accordingly, judicial immunity is not

overcome by allegations of bad faith or malice, the existence of which ordinarily

cannot be resolved without engaging in discovery and eventual trial." Id. (citations

omitted). Similarly, judicial immunity applies with full force where a judicial officer

is alleged to have conspired with other, non-judicial defendants to violate a

plaintiff's constitutional civil rights. See, e.g., Dennis v. Sparks, 449 U.S. 24, 30-31

(1980).

All of Judge Moran's alleged conduct was of a traditional judicial nature, and

all of plaintiff's dealings with Judge Moran took place in connection with her role as

a probate judge. Plaintiff does not seriously dispute that Judge Moran acted at all

material times in her capacity as a judge of the probate court, but rather argues

that Judge Moran in effect waived her right to claim judicial immunity through

allegedly making intentional misrepresentations and otherwise acting with malice

or in bad faith. However, as noted, judicial immunity is absolute, and applies even

---

[4] New Hampshire also recognizes the doctrine of absolute judicial immunity. See, e.g., Gould v. Dir., N.H. Div. of Motor Vehicles, 138 N.H. 343, 346 (1994) ("all judicial officers, when acting on subjects within their jurisdiction, are exempted from civil prosecution for their acts . . . ; [such] immunity applies even when the judge is accused of acting maliciously and corruptly") (citations omitted); see also Surprenant v. Mulcrone, 163 N.H. 529, 531 (2012).

where a judicial officer allegedly acts with patent malice or bad faith, so long as the complained-of actions were judicial and jurisdiction was not completely absent. See Mireles, 502 U.S. at 12. For these reasons Judge Moran enjoys absolute judicial immunity from suit in connection with all of plaintiff's claims against her.

Clerk Richardson similarly enjoys immunity from suit. The First Circuit has observed that judicial immunity "attaches or does not attach depending on what kind of action was performed rather than on who performed it." Harper v. Begley, 37 F.3d 1484 (1st Cir. 1994) (quoting Acevedo-Cordero v. Cordero-Santiago, 958 F.2d 20, 23 (1st Cir. 1992)). Pursuant to the doctrine of judicial immunity, "[a]bsolute immunity from damages . . . is extended to court officials other than judges when the officials perform judicial functions. . . ." Id. (citing Antoine v. Byers & Anderson, Inc., 508 U.S. 429, 436 (1993)); see also Slotnick v. Staviskey, 560 F.2d 31, 32 (1st Cir. 1977) (holding without significant analysis that judicial immunity applies to clerks of court to the same extent as to judges); Sullivan v. Kelleher, 405 F.2d 486, 487 (1st Cir. 1968) (same).[5]

---

[5] However, the First Circuit has also observed, apparently in dicta, that:

> While there is general agreement that court officials. . . who act at the behest of a judge or pursuant to a court order are entitled to absolute quasi-judicial immunity from suit as to those actions, the circuits are split regarding whether such officials are also entitled to absolute quasi-judicial immunity when acting within the scope of their employment, but not pursuant to the orders of a judge.

Forte v. Sullivan, 935 F.2d 1, 3 (1st Cir. 1991) (footnotes omitted). The Forte court did not attempt to resolve the circuit-split that it identified.

The amended complaint does not contain clear and specific allegations of Clerk Richardson's allegedly wrongful conduct, but rather generally avers that Clerk Richardson is liable to plaintiff because she either implemented or failed to oppose Judge Moran's decisions.[6]  As Clerk Richardson's complained-of conduct consisted entirely in assisting Judge Moran in connection with administration of Elaine's estate, she enjoys immunity from plaintiff's claims in this action.  See, e.g., Antoine, 508 U.S. at 436.

For these reasons, the court grants the judicial defendants' motion to dismiss (doc. no. 23) and dismisses plaintiff's claims against the judicial defendants with prejudice.  See, e.g., Del-Villar-Rosario v. P.R. DOJ, 573 F. Supp. 2d 496, 501 (D.P.R. 2008).  The court therefore need not address the judicial defendants' alternative arguments in favor of dismissal.

II.    Plaintiff's Federal Claims

    A.    Conspiracy to Effect Deprivation of Civil Rights in Violation of 42 U.S.C. § 1985(3)

Plaintiff alleges in Count 1 of the amended complaint that all of the individual defendants conspired to deprive him of his protected civil rights in

---

[6] The sole exception to this generality is a small handful of allegations that, liberally construed in plaintiff's favor, suggest that Clerk Richardson intentionally lost certain exhibits that plaintiff believes he properly submitted to the probate court.  See doc. no. 4, ¶¶ 108, 185.  Plaintiff concedes, however, that the probate court later accepted those same exhibits into evidence.  See id., ¶¶ 172-174.  The court does not find that the resulting brief delay in the probate court's receipt of the exhibits renders Clerk Richardson's actions non-judicial in character.

violation of 42 U.S.C. § 1985(3).  The individual Bianco defendants and Attorney

Stewart move to dismiss plaintiff's Section 1985(3) claim on the ground that

plaintiff has failed to allege the requisite discriminatory animus.

A Section 1985(3) claim has four elements:

> First, the plaintiff must allege a conspiracy; second, he must allege a
> conspiratorial purpose to deprive the plaintiff of the equal protection of
> the laws; third, he must identify an overt act in furtherance of the
> conspiracy; and finally, he must show either injury to person or
> property, or a deprivation of a constitutionally protected right.

Parker v. Landry, 935 F3d 9, 17-18 (1st Cir. 2019) (modifications omitted) (quoting

Perez-Sanchez v. Pub. Bldg. Auth., 531 F.3d 104, 107 (1st Cir. 2008)).  In addition,

however, "[i]t has long been established that a claim under § 1985(3) requires 'some

racial, or perhaps otherwise class-based, invidiously discriminatory animus behind

the conspirators' action.'"  Perez-Sanchez, 531 F.3d at 107 (quoting Griffin v.

Breckenridge, 403 U.S. 88, 102 (1971)).  The Supreme Court has explained that the

"predominant purpose" of Section 1985(3) is to combat animus against members of

racial minorities "and their supporters."  United Bhd. of Carpenters & Joiners,

Local 610 v. Scott, 463 US 825, 836 (1983).  Accordingly, the Supreme Court has

declined to extend the scope of Section 1985(3) beyond racially motivated

conspiracies, see id. at 837, and has specifically found that Section 1985(3) does not

reach "conspiracies motivated by economic or commercial animus," id. at 838.

Following Scott, nearly all circuit courts—including the First Circuit—have

declined to extend Section 1985(3) beyond invidious class-motivated conspiracies.

See Perez-Sanchez, 531 F3d at 109 (collecting cases).

Here, plaintiff alleges that the individual defendants conspired to defraud

him of his economic interest in Elaine's estate.  See doc. no. 4, ¶¶ 218-248.  He does

not allege that he is a member of a racial minority or of any other class that has

historically been subject to invidious discrimination.  See id.  To the contrary, the

only motive for the conspiracy that may be gleaned from the amended complaint, if

any, is economic in nature.  See id.  Absent allegations of racial or otherwise

invidiously class-based animus, plaintiff cannot state a Section 1985(3) claim.  See,

e.g., Perez-Sanchez, 531 F.3d at 109.  Accordingly, the court grants the Bianco

defendants' motion to dismiss (doc. no. 14) and Attorney Stewart's motion to dismiss

(doc. no. 16) as to Count 1.

B.     Deprivation of Fourteenth Amendment Equal Protection and Due
       Process Rights in Violation of 42 U.S.C. § 1983

In Count 2, plaintiff alleges all individual defendants' liability under Section

1983 for violating his Fourteenth Amendment rights of equal protection and due

process.  The individual Bianco defendants and Attorney Stewart move to dismiss

Count 2 on the ground that they are private persons and that plaintiff has failed

adequately to allege that they acted under color of state law as required under

Section 1983.  Attorney Stewart further argues, in the alternative, that plaintiff has

failed to allege an actionable deprivation of his equal protection or due process

rights.

Section 1983 provides a remedy against persons who deprive a plaintiff of

constitutionally or federally secured rights while acting under color of state law.

See 42 U.S.C. § 1983; see also Klunder v. Brown Univ., 778 F.3d 24, 30 (1st Cir. 2015) (quoting Santiago v. Puerto Rico, 655 F.3d 61, 68 (1st Cir. 2011)).  "Although a private party does not ordinarily act under the color of state law, a 'plaintiff may demonstrate state action by showing that a private party has conspired with state actors to deprive him of a civil right.'" Webber v. Deck, 433 F. Supp. 3d 237, 246 (D.N.H. 2020) (quoting Arias v. City of Everett, CV 19-10537-JGD, 2019 WL 6528894, at *9 (D. Mass. Dec. 4, 2019)).  Here, plaintiff argues that Attorney Stewart is a state actor because the probate court appointed him to serve as special administrator of Elaine's estate.  In addition, plaintiff argues that the individual Bianco defendants and Attorney Stewart acted under color of state law because they were engaged in a conspiracy to deprive him of his Fourteenth Amendment rights with the judicial defendants, who are officers of the New Hampshire judiciary.

The court rejects the argument that Attorney Stewart was a state actor by virtue of his appointment as special administrator of Elaine's estate.  Courts have routinely found that appointment by a court to serve as an estate administrator does not transform a private party into a state actor.  See Polk v. County of Dodson, 454 U.S. 312, 325 (1981); see also, e.g., Patterson v. Rodgers, 708 F. Supp. 2d 225, 238-39 (D. Conn. 2010) (attorneys appointed to acts as executors of estate are not state actors); Cummings v. LaCorte, No. CIV 10-0051 (SDW), 2010 WL 2710589, at *3 (D.N.J. July 7, 2010) (court-appointed administrator of estate not a state actor); Keeney v. Donatelli, No. CIV. A.06-5403, 2007 WL 475818, at *2 (E.D. Pa. Feb. 9, 2007) (court-appointed administrator for an intestate is not a state actor for

14

purposes of section 1983); Howard v. Brown, 738 F. Supp. 508, 509 (S.D. Ga. 1988)

(attorney acting as administrator and counsel for estate was not acting under color

of state law).  The court therefore turns to the argument that Attorney Stewart and

the individual Bianco defendants acted under color of state law by conspiring with

the judicial defendants.

To establish that a private party acted under color of state law by conspiring

with state actors, a plaintiff must plead "the relationship or nature of cooperation

between the state and a private individual . . . in some detail." McGillicuddy v.

Clements, 746 F.2d 76, 77 (1st Cir. 1984) (quoting Glaros v. Perse, 628 F.2d 679,

685 (1st Cir. 1980) (emphasis original)).  Speculation about what might have

occurred and general allegations of conspiracy or joint action with a state actor

without supporting allegations of specific underlying facts are insufficient to

establish that a private party acted under color of state law.  See McGillicuddy, 746

F.2d at 78; Webber, 433 F. Supp. 3d at 247.  Here, the only factual allegations

underlying plaintiff's broadly alleged theory of conspiracy with the judicial

defendants are that: Judge Moran appointed Attorney Goldman rather than

plaintiff to serve as administrator of Elaine's estate after Reginald's death, see id.,

¶¶ 33, 46-48, 114, 124; that at plaintiff's request Judge Moran appointed Attorney

Stewart to serve as special administrator following Attorney Goldman's resignation,

see id., ¶¶ 53, 124; that Attorney Stewart did not report the full extent of his

investigation to plaintiff or to the probate court, see id., ¶¶ 77-102, 110-113, 115-

117, 135-138, 145-146; that Attorney Stewart failed to take action in his capacity as

special administrator of Elaine's estate either to secure Judge Moran's disqualification or to investigate the Bianco defendants, see id., ¶¶ 118-119, 139-140, 142; that Attorney Goldman wrote two letters to Attorney Stewart offering to assist with Attorney Stewart's transition to the role of special administrator and thanking him in closing for his "consideration," id., ¶¶ 143-144; and that Judge Moran "acted pleased with special administrator Attorney Stewart's legal work" in facilitating negotiated resolution of disputes regarding Elaine's estate, id., ¶ 154. These factual allegations, together with the other allegations of the amended complaint, fall well short of establishing an agreement among the defendants to violate plaintiff's rights, let alone describing the nature of defendants' cooperation in furtherance of such an agreement. Plaintiff's allegations are therefore insufficient to support his theory that the private individual defendants acted under color of state law.

Even if plaintiff had adequately alleged that Attorney Stewart and the individual Bianco defendants acted under color of state law, he has failed to allege an actionable deprivation of his equal protection or due process rights under the Fourteenth Amendment. "To establish an equal protection claim, a plaintiff needs to allege facts showing that '(1) the [plaintiff], compared with others similarly situated, was selectively treated; and (2) . . . such selective treatment was based on impermissible considerations such as race, religion, intent to inhibit or punish the exercise of constitutional rights, or malicious or bad faith intent to injure a person.'" Davis v. Coakley, 802 F3d 128, 132-33 (1st Cir. 2015) (quoting Rubinovitz v. Rogato,

60 F.3d 906, 910 (1st Cir. 1995)).  Plaintiff does not allege that persons similarly situated to him received different treatment from the defendants, nor does he plausibly allege any impermissible basis upon which he was singled out for selective treatment.  Accordingly, he has not alleged an actionable Equal Protection violation.

"To state a procedural due process claim under § 1983, the plaintiff must allege facts which, if true, establish that the plaintiff (1) had a property interest of constitutional magnitude and (2) was deprived of that property interest without due process of law."  Clukey v. Town of Camden, 717 F.3d 52, 55-56 (1st Cir. 2013) (citing García-Rubiera v. Fortuño, 665 F.3d 261, 270 (1st Cir. 2011)).  Here, the court has no difficulty in finding that plaintiff had a constitutionally protected property interest in Elaine's estate.  However, plaintiff has not clearly alleged that any defendant before this court deprived him of his interest in the estate.  As noted, plaintiff is currently the estate's sole beneficiary as well as its administrator.  The only impairment of plaintiff's interest in the estate that can be gleaned from the amended complaint is Reginald's alleged conversion of some of its assets before his death in April 2017.  Perhaps more critically, the first amended complaint does not identify any process due to plaintiff in connection with any such deprivation that he did not receive or that any defendant prevented him from pursuing.  To the contrary, plaintiff alleges that the probate court held a series of hearings at which plaintiff was permitted to appear and to present evidence.  Plaintiff may disagree with the outcome of some of the probate court's proceedings, but it is well settled

17

that "[t]he constitutional right to due process protects a person's right to be heard, but does not guarantee a right to any particular outcome once he . . . has been heard." Johnson v. Prospect Mountain JMA Sch. Dist. SAU 301, No. 13-CV-207-LM, 2014 WL 2588952, at *7 (D.N.H. June 9, 2014).  Plaintiff has thus failed to allege an actionable violation of his Fourteenth Amendment procedural due process rights.

For all of these reasons, the court grants the Bianco defendants' motion to dismiss (doc. no. 14) and Attorney Stewart's motion to dismiss (doc. no. 16) as to Count 2.

III.    Plaintiff's State-Law Claims

Because the federal courts are courts of limited jurisdiction, see Commonwealth Sch., Inc. v. Commonwealth Acad. Holdings LLC, 994 F3d 77, 84 (1st Cir. 2021), when the presence of federal causes of action is the sole basis for the court's exercise of subject matter jurisdiction, it is generally appropriate to dismiss state-law claims for lack of jurisdiction following dismissal of all federal claims.  See 28 U.S.C. § 1367(c)(3) ("[t]he district courts may decline to exercise supplemental jurisdiction over a [state-law] claim ... if... the district court has dismissed all claims over which it has original jurisdiction"); Lares Grp., II v. Tobin, 221 F3d 41, 45 (1st Cir 2000); see also, e.g., Carnegie-Mellon Univ. v Cohill, 484 U.S. 343, 350 n.7 (1988); Dispensa v. Nat'l Conf. of Cath. Bishops, No. 19-CV-556-LM, 2020 WL 2573013, at *12 (D.N.H. May 21, 2020).

Here, because all of the parties are New Hampshire residents, diversity jurisdiction is not available over this action. Moreover, for the reasons discussed above, plaintiff has not stated any viable federal claim. At this early stage of these proceedings, it is therefore appropriate to dismiss plaintiff's state-law claims without prejudice to his right to refile them in state court. Accordingly, the court declines to exercise supplemental jurisdiction over plaintiff's state-law claims and dismisses them without prejudice for lack of subject-matter jurisdiction.

## CONCLUSION

For the reasons set forth above, the Bianco defendants' motion to dismiss (doc. no. 14), Attorney Stewart's motion to dismiss (doc. no. 16), and the judicial defendants' motion to dismiss (doc. no. 23) are granted. To the extent alleged against the judicial defendants, plaintiff's claims are dismissed with prejudice on grounds of absolute judicial immunity. To the extent alleged against the Bianco defendants and Attorney Stewart, plaintiff's federal claims are dismissed with prejudice for failure to state a claim and plaintiff's state-law claims are dismissed without prejudice for lack of federal subject-matter jurisdiction.

SO ORDERED.

_____
Landya McCafferty
United States District Judge

July 14, 2021
cc: Counsel of Record